Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1944 | **DATE** | 9/28/01 |
| **CASE TITLE** | Phillips vs. Associates Home Equity | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, defendant's motion to compel arbitration and stay proceedings is denied. Ruling on defendant's motion to dismiss class claims is denied pending inquiry by the Court regarding why plaintiff has not responded to the motion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | OCT 2 - 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | | 41 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | FILED FOR DOCKETING | | |
| OR | courtroom deputy's initials | | 01 OCT -1 PM 3: 56 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
OCT 2 - 2001

| | |
|---|---|
| JUAN PHILLIPS, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Case No. 01 C 1944 |
| ASSOCIATES HOME EQUITY SERVICES, INC.; CITIGROUP, INC.; CITIFINANCIAL CREDIT COMPANY; ASSOCIATES FIRST CAPITAL CORPORATION; and ASSOCIATES CORPORATION OF NORTH AMERICA, | ) ) ) ) ) ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Juan Phillips filed a class action complaint alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, in connection with defendants' handling of residential mortgage transactions. This case is before the Court on defendants' motion to compel arbitration and stay these proceedings based on an arbitration agreement executed by Phillips and defendant Associates Home Equity, and defendants' motion to dismiss all class claims pursuant to Fed. R. Civ. P. 23(d)(4) and 12(b)(6). For the reasons outlined below, defendants' motion to compel arbitration is denied, and ruling on defendants' motion to dismiss is deferred.

### FACTUAL BACKGROUND

In May 2000, Phillips obtained a residential mortgage loan in the amount of

4/1

$72,900 from defendant Associates Home Equity[1] to finance home improvements and pay off her existing consumer debts. Associates Home Equity offers financial products and services such as home equity loans, personal loans, automobile loans, and retail sales financing to consumers, and it specializes in providing credit to the "subprime" market, which consists of persons who are considered to be poor credit risks. Phillips' loan was initially arranged by a mortgage broker, Ficus Financial, which is not named in the complaint. As part of her loan transaction, Phillips received and/or signed a standard form mortgage broker agreement, a loan agreement, a rate reduction rider, a trust deed, a TILA disclosure statement, a HUD-1 settlement statement, and a notice of her right to cancel.

On May 23, 2000, in connection with the loan transaction, Phillips and Associates Home Equity also entered into a written arbitration agreement. Among other things, the agreement contains a section entitled "DISPUTES COVERED" that provides that the parties agree to arbitrate "all claims and disputes between you [Phillips] and us [Associates Home Equity]," including "without limitation, all claims and disputes arising out of, in connection with, or relating to" the May 2000 loan. *See* Arbitration Agreement, Plaintiff's Objection to Arbitration, Exhibit D. The agreement further provides that arbitration will be conducted through the American Arbitration Association ("AAA"), pursuant to its then-current "Commercial Arbitration Rules."

---

[1] Defendants First Capital and Associates Corporation are corporate affiliates of Associates Home Equity and are alleged to operate as a "common enterprise" with Associates Home Equity. Defendants' Memorandum in Support of Arbitration, p. 3. Defendant Citigroup acquired First Capital in November 2000 and is merging the business of Associates Home Equity, among other things, into CitiFinancial. *Id.* It appears that only Associates Home Equity dealt directly with Phillips.

2

In addition, the agreement includes a provision governing the costs associated with arbitration:

> COSTS OF ARBITRATION: If you start arbitration, you agree to pay the initial filing fee and required deposit required by the American Arbitration Association. If we start arbitration, we will pay the filing fee and required deposit. If you believe you are financially unable to pay such fees, you may ask the American Arbitration Association to defer or reduce such fees, pursuant to the Commercial Arbitration Rules. If the American Arbitration Association does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules determine who will pay those fees.

Arbitration Agreement, p. 2, Plaintiff's Objection to Arbitration, Exhibit D.

On March 19, 2001, Phillips wrote a letter to Associates Home Equity purporting to rescind her loan agreement pursuant to TILA. One day later, Phillips filed this suit seeking declaratory rulings and damages based on Defendants' alleged TILA violations.

## ANALYSIS

"It is beyond peradventure that the Federal Arbitration Act embodies a strong federal policy in favor of arbitration." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress International, Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993) (citing *Moses H. Cone Memorial Hospital v. Mercury Construction*, 460 U.S. 1 (1983)). The party opposing arbitration bears the burden of proving that the claims at issue are not subject to arbitration. *Green Tree Financial Corp. v. Alabama*, 531 U.S. 79, 91-92 (2000). Phillips makes five arguments in opposition to arbitration: (1) she rescinded the entire May 2000 loan transaction (which included the arbitration agreement), and therefore the arbitration agreement cannot now be enforced; (2) the arbitration agreement is an unenforceable waiver of her substantive rights under TILA because it does not

3

guarantee her an award of attorneys' fees and litigation expenses if she is successful in arbitration; (3) the arbitral forum is prohibitively expensive; (4) the American Arbitration Association is biased in favor of the defendants; and (5) the arbitration agreement was the result of fraud in the inducement. Only Phillips' argument regarding the expense of the arbitral forum is sufficient to defeat defendants' motion to compel, and on this basis we deny the motion. We will deal with each of Phillips' arguments, addressing the cost argument last.

*Recission of the Loan Agreement*

Phillips argues that the arbitration agreement is unenforceable because prior to filing the lawsuit, she rescinded her loan contract pursuant to TILA Section 1635 and accompanying Regulation Z, 12 C.F.R. § 226.23. Therefore, Phillips asserts, "[b]y rescinding her contract, all agreements and terms under the contract, including the right to arbitrate claims were erased." Plaintiff's Objection to Arbitration, p. 6. Defendants deny that Phillips effectively rescinded her loan contract. Defendants' Memorandum in Support of Arbitration, p. 10.

The law in this Circuit is clear that arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Sweet Dreams*, 1 F.3d at 641(quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). In making this determination, the court looks to the arbitration agreement itself and "will not allow a party to unravel a contractual arbitration clause by arguing that the clause was part of a contract that is voidable." *Colfax Envelope Corporation v. Local 458-3M, Chicago Graphic Communications International Union*, 20 F.3d 750, 754 (7th Cir. 1994) (citations omitted); *cf. Sokaogon Gaming Enterprise Corporation v. Tushie-Montgomery Associates*, 86 F.3d 656, 659 (7th Cir. 1996)

4

(illegality of contract containing arbitration clause does not infect the clause itself)).

On its face, the arbitration agreement clearly applies to what is apparently a disputed claim for recission, as well as Phillips' other claims regarding TILA violations. Indeed, the agreement specifically provides that the parties will arbitrate "all claims and disputes arising out of, in connection with, or relating to" the loan agreement. There is no question that this all-inclusive language covers the issues at hand, and Phillips' objection to arbitration on this basis fails.

*Waiver of Substantive Rights*

As Phillips correctly asserts, a prevailing consumer may recover attorneys' fees and litigation costs under TILA. 15 U.S.C. § 1640(a)(3). Phillips argues that because the arbitration agreement does not specifically mandate the award of attorneys' fees and costs if she prevails (the agreement is instead silent on the issue), the agreement operates as an unenforceable waiver of her substantive TILA rights. Plaintiff's Opposition to Arbitration, p. 11.

It is true that a party does not "forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). We do not agree, however, that the arbitration agreement waives Phillips' substantive right to attorneys' fees and costs. While the agreement does not mandate the award of attorneys' fees and expenses, neither does it preclude the arbitrator from awarding the same relief as a court. TILA clearly requires an award of attorneys' fees and expenses to a prevailing consumer, and there is nothing to prevent an arbitrator from following this statutory dictate, nor is there any reason to believe an arbitrator

5

would ignore the statute. *See Johnson v. West Suburban Bank*, 225 F.3d 366 (3rd Cir. 2000) (attorneys' fees recoverable in arbitration in a TILA action, as arbitrators possess the power to fashion the same relief as courts). Phillips' claim to attorneys' fees and costs is further protected in that the arbitrator's award of fees is subject to subsequent judicial scrutiny to ensure that the arbitrator complied with the requirements of the statute. *Gilmore*, 500 U.S. at 32, n. 4. We accordingly find no reason to deny enforcement of the parties' arbitration agreement on this basis.

***Bias of the American Arbitration Association***

Phillips further argues the arbitration is inappropriate because the American Arbitration Association is biased in favor of the defendants. Phillips cites a series of cases against Ryan's Family Steak Houses, which involved employees' agreements to arbitrate disputes with their employer through an organization called the Employment Dispute Services, Inc. ("ESDI"). Plaintiff's Opposition to Arbitration, p. 18-19. These cases are clearly distinguishable; in those cases, the defendants had on-going service contracts with ESDI and paid ESDI to maintain an employment dispute resolution forum. Here, Phillips provides no evidence that the AAA, one of the country's leading non-for-profit dispute resolution organizations, is on defendants' payroll or any other evidence of actual bias on the part of the AAA. The fact that the AAA has submitted amicus briefs on behalf of parties seeking to uphold arbitration agreements does not suggest that the AAA is biased in favor of those parties, but only that it is in the AAA's own interest to encourage arbitration. In the absence of any credible evidence of actual bias in favor of lenders, we "decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and

impartial arbitrators." *Gilmore*, 500 U.S. at 30.

***Fraudulent Inducement***

As Phillips correctly notes, if a claim of fraudulent inducement goes to "fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it." *Prima Paint Corporation v. Flood & Conklin Manufacturing Company*, 388 U.S. 395, 403-04 (1967). In other words, in order to remain in the judicial forum, a plaintiff "must show that the arbitration clause itself . . . is vitiated by fraud, or lack of consideration or assent, . . . ; *that in short the parties never agreed to arbitrate their disputes.*" *Colfax Envelope*, 20 F.3d at 754 (citations omitted) (emphasis supplied).

Phillips argues that the arbitration agreement was fraudulently induced because the defendants "[r]equir[ed] the use of an arbitration contract," while "misrepresenting" the fact that Associates Home Equity was under investigation by the FTC. Plaintiff's Opposition to Arbitration, p. 20. Phillips' argument misses the mark. Her claim regarding defendants' alleged misrepresentations about the FTC does not address whether the arbitration agreement itself is vitiated by fraud. There is no evidence that Defendants misrepresented the purpose of the agreement or the operation thereof, nor did anything else that would lead us to conclude that the parties "never agreed to arbitrate their disputes." Accordingly, this argument provides no basis to defeat the motion to compel arbitration. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1150-51 (7th Cir. 1997) (rejecting plaintiff's argument that the arbitration clause is unenforceable as part of a scheme to defraud, and noting that such argument does "not require more than a citation to *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*").

7

## *Costs Associated With Arbitration*

We finally address Phillips' argument that the costs associated with pursuing her claims in the arbitral forum are prohibitively high. As the Supreme Court recognized in *Green Tree*, "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree*, 531 U.S. at 90. The Court further determined that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. At that point, the onus is on the party seeking arbitration to provide contrary evidence. *Id.* In *Green Tree*, the record contained no evidence regarding the costs associated with arbitration, and the Court thus refused to invalidate the arbitration agreement based on an entirely speculative "risk" that the plaintiff would be "saddled with prohibitive costs." *Id.* at 91.

In contrast to the plaintiff in *Green Tree*, Phillips has come forward with evidence that the costs associated with arbitration would effectively preclude her from pursuing her TILA claims. Specifically, Phillips offers evidence from the AAA that she will be forced to pay upwards of $4,000 simply to file her claim. Plaintiff's Opposition to Arbitration, p. 14 and Exhibit E. It is true that the arbitration agreement provides that defendants agreed in the parties' contract to front this amount, but the agreement makes this subject to later allocation by the arbitrator. Furthermore, the initial filing fee is far from the only cost involved in the arbitration. The AAA's Commercial Rules provide that the arbitrator's fees (which range from $750 to $5,000 per day, with an average of $1800 per day in the Chicago area), travel expenses, rental of a hearing room, and other costs are borne equally by the parties, absent some agreement between

8

the parties – an agreement that is lacking in this case – or a different division made at the discretion of the arbitrator. In further support of her argument, Phillips provides an affidavit stating that she "cannot afford to pay" the filing fees and other costs, and that she is in "severe financial straits." Plaintiff's Opposition to Arbitration, Exhibit F, ¶ 9, 10. We see no reason to doubt Phillips' assertion regarding her financial viability, particularly in light of Phillips' inclusion in the "subprime" market targeted by Associates Home Equity. Thus even if we disregard the filing fee, the cost of pursuing arbitration appears to be prohibitive for Phillips, and it is likely to be at least twelve times what it currently costs to file a case in federal court.

In response, defendants do not dispute that Phillips cannot afford the costs associated with arbitration. Instead, defendants argue that the AAA's Commercial Rules contain certain safeguards to protect Phillips against incurring exorbitant costs. These arguments are unavailing. First, defendants argue that Phillips is protected from the expenses of the arbitration because the parties can agree that the costs will be borne by one party. That argument is beside the point here, as defendants have not offered to bear the costs (aside from their agreement to front the filing fee). Second, defendants note that the arbitrator at his or her discretion can assess all expenses to one party at the conclusion of the case. Defendants' Reply in Support of Arbitration, p. 8. But that is nothing more than an argument that there exists *some possibility* that Phillips ultimately may not have to bear a prohibitively expensive portion of the arbitration costs. This is not enough to defeat Phillips' evidence that she would have to expend thousands of dollars that she does not have in order to pursue her claim, with no solid way of getting the money back. Finally, defendants' assertions that AAA arbitrators "customarily" serve without compensation for the first day of service in smaller cases does not appear to apply here, as

Phillips is seeking rescission of a loan agreement involving over $70,000, and the AAA rules cited by defendants apply to claims involving less than $10,000. *See* Defendants' Memorandum in Support of Arbitration, p. 7, n. 5.

Defendants further argue that Phillips' cost showing amounts only to "pure speculation," and that Phillips' "generalized assertions" of possible costs should not defeat arbitration. Defendants' Reply in Support of Arbitration, p. 8. We disagree. Phillips has made a reasonable, good faith effort to estimate her arbitration costs with assistance from the AAA, and without actually going through arbitration and receiving a final bill, we see no way for her to provide a more precise showing of her costs than she has done here. We are satisfied that Phillips has met her burden under *Green Tree* of showing that the expense of arbitration would be prohibitive in this case, and we find that defendants have failed to adequately contest that showing. *See Green Tree*, 531 U.S. at 92; *See also Giordano v. Pep-Boys–Manny, Moe & Jack, Inc.*, No. 99-1281, 2001 WL 484360 (E.D. Pa. March 29, 2001) (finding that arbitration costs in the thousands of dollars would deter plaintiff's vindication of his claims; thus the cost-sharing provisions of the arbitration agreement were unenforceable). We caution, however, that the cost showing made by Phillips does not create some bright-line rule for future litigants. Instead, the inquiry must be determined on a case-by-case basis.

In sum, Phillips has carried her burden of proving that the costs associated with arbitration would effectively preclude her from vindicating her federal statutory rights. Accordingly, we deny defendants' motion to compel. In the event, however, that defendants were to agree to bear the costs associated with the arbitration, the Court would be willing entertain a motion to reconsider its ruling on that basis.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Compel Arbitration and Stay Proceedings is denied. Ruling on Defendants' Motion to Dismiss Class Claims is denied pending inquiry by the Court regarding why plaintiff has not responded to the motion.

Dated: September 28, 2001

MATTHEW F. KENNELLY
United States District Judge